Yes, Your Honor. Good morning. May it please the Court. I'm Maurice Harmon for the plaintiff, Alaska Stock. We're yielding five minutes of our time to the Department of Justice of the United States. All right. And were you planning to reserve any time for rebuttal? Yes, Your Honor. I would ask for three minutes. Okay. So that means after seven minutes, you're going to sit down and give the government five minutes, and then you'll have three minutes, right? Yes. Okay. Thank you. You can proceed. Your Honor, this is a copyright infringement case. I think he said his name. Yes. My name is Maurice Harmon, and I'm here representing Alaska Stock, the plaintiff below and the appellant here. So this case is a copyright infringer has attempted to create a theory of statutory interpretation of Section 409 that permits and creates a giant loophole for them to run through to avoid responsibility for numerous copyright infringements. Essentially, they're contending, Houghton Mifflin, Harcourt, ironically itself a producer of copyrighted work and textbooks that are distributed all over the country, are arguing that a system of registration that's been in effect for over 30 years, for the registration of compilations, including the textbooks that they produce, has been wrong, has been done wrong, and in fact violates Section 409, because 409 requires great specificity with respect to registration, and that that specificity doesn't just apply to the compilation work, but also to the component parts, the separately copyrighted works that have been included in a statute's ambiguous, you have to contend that in order to get to the documents that you want, right? Well, it's certainly ambiguous with respect to this issue, whether work as is defined in Section 409 is referring to the compilation as a whole, or work also refers to every single individual and separately copyrighted work that may be included in a compilation. Now, there has been a statute passed that says you have to be more specific now, but your position is that doesn't apply, right? Doesn't it have to be more specific now? No, the latest pronouncement with respect to registration was in 2008, and essentially the Congress decided that there had been two frequent attacks by infringers on registration, and in fact now requires for a successful registration attack that essentially two conditions are fulfilled. One is that information was intentionally left out of the registration application, and two, if that information had been included, the Copyright Office would not have registered the work. Is that the statute to which the judge refers? Well, I guess, but anyway, I don't think it would, I don't think it makes a difference on this. There was a change in the CFRs too, wasn't there? Yes, in some of the Code of Federal Regulations relating to registration, there have been changes, but none that negate the alternative interpretation of 409 that the Copyright Office has made for over 30 years, and various courts across the country... So the changes are immaterial to this case, or cases like it, or are they material? It's our view they're immaterial to this particular issue. So you registered compilation, the proper way to register compilations is the same now as it was when the registration was done in the case before us? Essentially. There may have been minor changes with respect to the regulations, but essential to the issue in front of this court. There was something about continuation sheets that changed, I remember, and I can't remember exactly what it was or how it affected it. That's correct for group registrations. This registration, the registrations at issue here are single unit of publication registrations and registrations of automated databases. Does that matter to this case, that change? It does not. And the essence really of the argument here is whether the court is going to take one of two approaches... Hold on just a sec. Let's suppose for the sake of discussion that we think 409 is ambiguous, and let's suppose for the sake of discussion that we think to the register of copyrights to make the regulations and forms necessary for proper registration. What should we look at precisely in the Code of Federal Regulations and the form? You should look at the Code of Federal Regulations that applies to the registration of automated databases. I've got it right here. You can just read off the number. I believe it is 37 CFR 2023 B5, but I hesitate to say that without actually finding it. We have that... That's okay. I thought you might know it off the top of your head, but if you don't, I can find it. I apologize. I don't, because there are several subsections of 202.3 that apply. But essentially the regulation was followed precisely here. Both the one that was in essentially was the regulation in effect at the time of these registrations. Well now, are any of the agency interpretations of the copyright registration procedures, are any of them entitled to a higher deference than a Skidmore deference? And if so, which ones? Well, certainly the reference with respect to the regulations would be entitled, any regulation that interprets the statute would be entitled to a Skidmore defense. And counsel for the USA will address that. But additionally, there are compendium, there's compendium language, which may not be entitled to the Skidmore defense, but certainly is persuasive that deals directly with this issue. So you're not arguing Chevron deference on anything? Well, certainly with respect to, we would argue Chevron deference with respect to regulations. And we think the regulations are databases, yes. We would argue there should be a Chevron deference there to that regulation. We don't think we're able to do that with respect to the compendium, which is not a regulation, but instead a guideline, an internal guideline that directly addresses this issue. You're getting into your rebuttal time, so you have two and a half minutes left for rebuttals. Yes, I'll reserve that time and permit the rest of the arguments of the USA. Thank you. May it please the court, Melissa Patterson for the United States. The district court erred here in its interpretation of the Copyright Act. And it erred Could you do the same thing for me? Let's assume for purposes of discussion that 409 is ambiguous. And let's assume that under 408 and 409 that Congress has given the register of copyright a considerable degree of discretion in determining how to register works such as these What regulation should I look at and how should I read it to determine how the register of copyrights has regulated that kind of registration? There are some regulations we can look to to see Is it 202.3, subsection 4, group registration of related works, automated databases? Is that the right one? That is one of the regulations on groups of related works. What we're trying to figure out here is how has the Copyright Office read section 409? And you can look at 202.3b.4, registration as a single work, which is a specific type of group registration, specifically says, and this is only one of the types of ways that you can register a group, but for unpublished collection, registration extends to each copyrightable element in the collection. So right there we have a statement of how registration of compilations works right in the regulation. This court also defers to the compendium of the Copyright Office where reasonable. It said so in the Bat Jack case and it reiterated that more recently in the Richland case. And we have very clear compendium statements saying if you are registering a collective work, you do not need to list every single title, every single author, every single date of first publication, every single day of year of creation for every component work that a registration is intended to extend to. And there are very good reasons for this. What is a compendium exactly? I know it's not a regulation and it's not a rule. I've never seen the word before in the administrative law context. The compendium is defined at 37 CFR. I believe it's 210.2, but I can get you a 28-J letter on that. And it describes the compendium as an administrative staff manual and it's designed to give its examiners guidance about what does have to be on a registration. Oh, I know, a staff manual. Sorry, we get those all the time. So that's not a Chevron deference. Yes, the statement set out in there would be entitled only to the deference described under Mead. But let's note all of the factors the court said, even if an agency position is not entitled to the full Chevron deference, they get more deference the more persuasive they are. And they look to factors like the consistency of the agency's interpretation, how long-standing it is. So the fact that the longer-standing it is and the less it's related to a particular litigation stance that you're saying your stock goes up, as it were. Yes, and I think our stock is at a premium here. The language I quoted you from the regulations has been there since 1978 when the first regulations implementing the 1976 Act went forward. Which language did you get from the regulations? That was from 37 CFR 202.3B4 subsection 1, subsection B. So it's down there a ways. But that's been out there. And there are multiple instances in the group registrations, if you look at B5, B6, B7, B8, B9, where the Copyright Office has said you don't need to list every single element that's in 409 for every single component work. That would be entirely impracticable. When someone goes to register the Encyclopedia Britannica and they want the registration to extend to every single article within there, they don't need to list the thousands and thousands of articles, the thousands of authors, the thousands of dates of years of creations of those articles in order to get an effective registration. And that is what defendant here is arguing. That was not the case under the previous prior to 1976 regime, the 1909 Act, when people registered. People never listed the titles and authors of everything. That argument is really clear. The one on the regs is a little harder to follow. Are these things automated databases? Are they related serials? I'm trying to figure out which of these to apply. So I believe in this case there was both an automated database of photos and a compilation submitted on a CD-ROM that was published at the same time. I know that, but I don't know which category to put it on. So I think the latter, the CD-ROM, and Alaska Stock Council may be able to address this more specifically, would qualify as registration as a single work. So that would be under 202.3.B.4.1.A. And the automated databases would be under 202.3.B.5. I see that I am out of time. Well, I think Judge Kleinfeld may have some additional questions. If I could just make one related point. The reason that we know Congress didn't think that 409 was somehow as self-defining, despite the fact that nobody in the entire 35 year of the Act has thought that it should be read this way, is if you look at 408.C.2, where for a particular type of group of related works, Congress said, hey, we do want you to identify each work separately. It did not say that for the general authority under 408.C.1. That statute says the Copyright Office gets to decide what you have to do if you want to register a bunch of stuff in a single registration. All right. Thank you for your argument. May it please the Court. My name is Russell Jackson. I represent defendants Houghton Mifflin Harcourt Publishing and R.R. Donnelly. Now, for you to prevail in this, you already prevailed, but for you to prevail again, do you have to, must we find that the statute is unambiguous? No, Your Honor. I do not believe you would have to find that the statute is unambiguous, although I would note that three district court judges in four opinions and now another district court judge in an opinion brought in another Harmon and Seidman case and by the plaintiff being against Pearson in the District of Arizona have all found that Section 409 is unambiguous. Counsel, the way I read 408 and 409, 408 has this language, the Register of Copyrights is authorized to specify by regulation the administrative classes into which works are to be placed, and the regulations may require or permit for particular classes, and then it says all the possibilities here, including may permit a single registration for a group of related works, and it says without prejudice to the general authority, the Register shall establish regulations specifically permitting a single registration for a group of works by one author. And then I go to 409, and before it gets to the specifics, the statute says the application shall be made on a form prescribed by the Register of Copyrights. Now, the way I read those two things is Congress has purposely delegated to the Register of Copyrights a lot of lawmaking authority to specify classes of things by regulation and to prescribe the kind of form for making registrations. Then I get to how it's been done, and the Register of Copyrights has issued regulations, albeit they're somewhat difficult to read, and it has also used a form and had a procedure for the form, which is pretty easy to understand, and that Alaska Stock followed. And considering the amount of deference that Congress gave to the Register of Copyrights, I don't see why we shouldn't defer to the Register of Copyrights and let the Register of Copyrights do whatever it wants with regard to registering this kind of compilation. Let me begin, Your Honor, by noting that this Court has held that the purpose of the registration process in the copyright context is to create a viable national registry of copyrights. The application, if you look at it... Well, sure, but... But if you look at the application... For how to do that, Congress said, Register of Copyrights, you know this stuff, we don't, you do it. Actually, it said in Section 702 that the Register gets the authority to establish regulations not inconsistent with the law. Section 409 says you shall identify the following things. Now, why would it do that? It does it because the registration application is, in essence, the deed, the description of the intellectual property that's being registered. If you don't identify what pictures are in the claim, and if you don't identify the author and the picture... How do you deal with the argument that Alaska Stock and the United States have made against this proposition of yours, that then a newspaper would have to register each authored story separately and National Geographic would have to register each picture separately? First of all, even the government told you when she was identifying the various regulations that might be applicable here, she did not identify the serials regulation. And the serials regulation is not at issue here. It deals with a different kind of problem, and it deals, I might add, with published works that are easily identifiable if you go out and need to look them up. If I need to go out and look up a picture that happened to be contributed by Alaska Stock, however, and not identified by any author or any title, I can't find it. It's not in a register. It's not anywhere that I can find as to its copyright status. So the serials regulation is just simply not at issue here. I would also like to note the government's concession in their brief, and I'm looking at their brief at page 7, that although these regulations do not address whether any component works within an automated database, are also registered when either a single database or a group of databases is registered. This is the government telling you that their own regulation does not say. They also have authority under 409 to specify the form that you use, and that they have specified the form, and it looks like there's conformity to the form they specified. With respect to the forms that they have specified, the forms that you even noted, I believe, in your earlier questioning, the specific regulation that says you may use an addendum form to identify the title and the author of any picture submitted, and in fact there is a regulation which was B-10, which may have been the one you were asking Mr. Harmon about, I'm not certain, that deals with published photographs and says even with published photographs, you still need to do this in a way where we can identify what intellectual property is being registered. You can have up to 750 of them listed on your continuation sheets if you want, but it's absolutely no problem at all to put the author and the title of the pictures that are being registered, if that's what you're intending to do. And of course, what the plaintiffs are asking you to do here, with respect to the... Where it says here in the copyright compendium to 1984, 615.06, that the names of the individual authors and separate contributions being registered as part of the claim need not be given on the application, I guess your answer would have to be that does not have the force of law, and even though that has been the way things have been done for 30 years, it's not correct under the statute. You're correct that I would say it does not have the force of law, it is not entitled to Skidmore deference, in that it does not advance the registration purpose of the statute. You also said that it's the way things have been done, and I would point out to the Nanette Petruzzelli letter that is in the record, where this is in the interchange that was had back and forth with Nancy Wolf of PACA, and in that letter, even there, the chief of the examining division says, I point out, the compendium to 615.07b3 does further state that the office prefers the names of all authors by use of continuation sheets. Let me ask you about 615.07b3. It says, if the work being registered was created by a large number of authors, that applies here, the application will be considered acceptable if it names at least three of the authors, followed by a statement such as and, and then some number of others. Now, that's precisely how the application was written here. And then the next sentence is, the office prefers, however, that the application name all authors using as many continuation sheets as necessary. So the way I read that is, it's acceptable if it's precisely in the form that it was here, it says three plus some number of others, and it would be nice, but it's not required, that continuation sheets be used to list all the authors. Well, Your Honor, that definitely was. 615.07b3 says. That was the copyright office's position, where you said it would be nice, but it's not required. I disagree. And I cite Section 409 for that, and for federal district judges. That's the Register of Copyrights, and you're the lawyer for a party, so you have to show that the Register of Copyrights is not permitted by law to proceed in that way. And, again, I would argue, first of all, that 70, was it 3 or 8, I can't remember which section I cited, says the Register of Copyrights may only operate as far as the law allows. Section 409 requires, and it makes sense to require. But you're saying that they were not allowed to do that. That's exactly what I'm saying, and I'm saying it did not further, and this is important for Skidmore deference and why it doesn't get any. Nobody on this side of the table can tell you today why the actions that they allegedly took were in any way to further Congress's purpose of what this court has recognized, which is creating a robust national registry of what actually has been registered as intellectual property. Now, do you concede that what Judge Kleinfeld just read, that it wasn't prepared for this particular case? No, it was a private communication from the office to a private individual. It's certainly not a rulemaking. No, that wasn't what he was reading. He was reading from the compendium. Oh, and I thought you were also referring then to the letter here. No, but the compendium wasn't created for this lawsuit, was it? No, the compendium definitely was not created for this lawsuit. It's a document that if you go on the website and attempt to find it, they'll tell you you can come and inspect it at their offices. It is not a regulation. It has not been given notice and comment power. It has very, very little, if any, authority as far as what you should defer to. And, in fact, even Mr. Harmon, when you asked, should it be, you know, is that something that we should be giving any kind of deference to, he didn't say that you should. I think I asked if he was asking for Chevron deference on anything, and he said no. Okay. Not that was there any deference that should be. So I think that's the way I understood my question and his answer. Our position with respect to the compendium and with respect to the letter from Ms. Petruzzelli and others is that the Copyright Office has basically explained to the government's brief they didn't want to do a lot of typing. Is the compendium not on the Web? You have to physically go to their office? That's what, yes. It's not even in print by the Government Printing Office at this point. Nobody puts anything in print anyway. It's not on the Web? It's not on the Web at the Copyright Office. I believe that Franklin Pierce Law School has all or part of a compendium, and it has it on its website. But if you go to the official government website, other than I think perhaps two sections that recently have been amended, you're not going to find the compendium there. At least I've not been able to. I should say that. I'd like to address, if I could very quickly, the attempt to use the mistake provision of 411B as some way to otherwise get by the plain language of Section 409 and the requirement that you identify the property that you're actually registering when you register it. The opinion, particularly of Judge Campbell in the District of Arizona, and also on reconsideration, the opinion of Judge Preska in the Munch case, take this on, I think, very well. They basically say that to do this would transform what was an application, a valid application, to register a collection, and the collection is in fact validly registered, into an application to register a lot of thousands, actually, of images that are unidentified and unattributed. There's simply no description of any way, shape, or form. Your argument that that would not further the goals is a good one, but I don't know if it's adequate. I'm thinking of real estate title. Traditionally, at least back East, the way that's done is you have an index of transactions by vendor and vendee, and it's pretty nearly useless to anyone who would like to know who owns anything unless they maintain their own, I think they used to call it a title plant, where the title companies in the West or the law firms that do title work in the East would maintain maps of the whole county and the vendor-vendee information would be, they'd have some clerk write it in on the maps, and that was the only way you could figure out what the descriptions applied to and who owned anything. But it was administratively inconvenient for the government to do all that work, so it didn't. Just like here, it seems to be administratively inconvenient for them to type a lot, so they don't. Unfortunately, or fortunately, depending upon which side of the table you're sitting on, Congress has required, it says, you shall include certain identifying characteristics, including the authors and the title of the works. Even if those titles are numeric titles, if I'm presented with a claim, if my friend Mr. Harmon sends me a letter and says I have pictures I think you go to, if you want to use one of the photos that you see on the web from Alaska Stock, I think you go to Alaska Stock for the rights and you pay them, right? Sure, but if they come to me with a claim saying that I've allegedly That's the reason for the registration. You want to know who owns the property for purposes of who I'm supposed to go to to ask for permission to use the picture and who I'm supposed to send the check to. And you can find that out from this registration in the form that it is. But even is the government recognized in their brief, there are other purposes than just that for having a robust registration system. And frankly, if I get a claim letter from Mr. Harmon saying you've used this picture in excess of license terms, one of the first things that I want to know is, is it a pre-registered image or not? Now, I can't go at this point because they've not included any of the identifying information on their application. I can't go to the Copyright Office's database and actually look it up and see when it was registered. How would you find the image except by going to Alaska Stock's web page of stock photos and saying, oh, this looks like a good picture. If he sends me a letter with a claim and describes it in whatever terms he uses to describe the image, those presumably are the same terms he's going to use the author. And if it's picture D1789, I ought to be able to go to the registrar's database and look up a picture. I'm thinking a little more practically. I'm thinking an honest publisher needs a picture of an African mother and baby. Browse around on the web. Well, I guess it's Alaska. Eskimo mother and baby. You need a picture of an Eskimo mother and a baby. So you go to the Alaska Stock photos, and they've got 17 dozen mothers and babies, and a bunch of them look like they're Eskimos. So you pick one out for your textbook about peoples of America. And you got it from the Alaska Stock web pages of their stock photos. So you just write to Alaska Stock and say we want to use the picture and send us your invoice and permission. I don't see how else it would work, and I don't see why you need any more. First of all, Congress said that we do need a robust registration system. But allow me to say that one of the purposes. Counsel, the reason we keep talking over each other is you want to answer a question different from the one I'm asking, and I want to ask a question different from the one you're answering. What I want to know is not how you interpret the law. What I want to know is how practically could you be in a situation where you could be confused about who to ask for rights and who to send the money to. One does not typically go shopping for photographs on the Copyright Registrar's website. No, you go to the Alaska Stock website. Right. However, one of the purposes that the government even acknowledges in their brief for this database is also for litigants who are sued or presented with claims in copyright litigation to be able to go and to check the copyright status of that claim and whether or not the image is in fact registered, and if so, when it was registered. I am completely unable to do that as a litigant because the rules of Section 409 have not been complied with in this instance, and I'm left to rely on what I might be able to get if I ultimately end up in a lawsuit and in discovery from the plaintiffs themselves. But I am completely unable to use the registrar's database for what even the government has said in their brief is one of the purposes for having a robust registration system. All right, your time has expired. I'll address the last point first. It's our responsibility during trial to... It's the plaintiff's responsibility during trial to establish registration, and any challenge to registration with respect to a particular image could be dealt with during the course of the trial, and if we don't prove that a particular image was registered, then we don't get the remedies, attorney's fees or the chance at attorney's fees, and statutory damages that otherwise we would get if that image had been registered prior to the infringement. So the claim that somehow if this registration isn't accomplished according to the theory of the defendants, they're going to be at a disadvantage in litigation is just not correct. Second, the robust registration system that Houghton pretends exists here in fact doesn't, even in those scenarios where we don't have a compilation. For example, if you register one photo by itself, there is nothing in the title of that photo whatsoever that would assist Mr. Jackson or his client, Houghton Mifflin, in locating the photo in the system of registration that exists. The registration is not an indexing system. It is no longer even required to register assignments of ownership with the Copyright Office, something that occurred prior to the 76 Act. So the idea that somehow there's a robust system of registration that is the purpose of this congressional activity is really a fiction designed to support. Oh, I see. You're saying it would do no good at all to anybody to list Alaska mother and baby. Or a tree. A photograph of a tree would not somehow tell you that it was a particular tree somewhere, and there is no requirement in the regulations to somehow try to define in a title the content of a photo. And there's no way to check the content of a photo against a huge library of photographs. And in this case in particular, it's a fiction because Mr. Jackson and Houghton Mifflin know very well who the authors and the owners of the copyrighted work that they infringed en masse are. They contacted them in the first place and got the photo that they infringed from Alaska Stock. So the idea that somehow the registrations that were done here have hampered Houghton Mifflin, a textbook publisher of its own, and prohibited them from somehow not infringing, kept them from infringing, is just untrue. The facts here don't support that at all. This is just an after-the-infringement argument that's about attorney's fees and about statutory damages and a theory through which they can deny Alaska Stock even the right to come to the courthouse, the keys to the courthouse. All right, your time has expired. The panel wishes to have a minute of rebuttal to the amicus here to respond to what's been said by the appellee. Thank you very much, Your Honor. Two points. First, the regulations do not specifically address the extent to which an automated database registration extends to the component works, but the regulations do evidence and have always evidenced the Copyright Office's interpretation of 409, which is if you are registering multiple things together, you do not always have to list every title, every author, every piece of information specified in 409 for every component work. And that is clear. Even if the reading as applied to automated databases is not spelled out in the regulations, it's only spelled out in the compendium, which this Court does defer to as reasonable. Our view of 409 has been consistent and consistent in our regulations. Second, I believe Mr. Jackson said that the serial regulations are not at issue here. What's good for the goose is good for the gander. If 409 requires the specification for automated databases, it does the same for all forms of collective works, all forms of group registrations. And so the havoc that could be wrought in the copyright system if this novel view of 409 goes forward extends to serials, it extends to magazines, newspapers, encyclopedias, multiple types of works. All right, thank you. Would we be the First Circuit Court to speak on this? In a sense, this would be the First Circuit Court to respond to this particular form of 409 argument raised newly by Houghton Mifflin in multiple district courts around the country. Other circuits have consistently held that collective work registration permits you to sue. It does a good enough registration on the component work. So the Second Circuit, the Fourth Circuit, and the Fifth Circuit, if this Court agreed with the district court's reasoning on 409 here, it would be going into conflict with three other circuits. All right, thank you for your argument. Now, just one second here. Not one second. I see people in the audience trying to approach the podium, and I want to know. It's on the Nelson case, but I thought I saw both lawyers at some point, and I don't want an ex parte communication. So I'm not going to allow. The other attorney is here, Your Honor. All right. I'm not going to reopen argument. I don't intend to, Your Honor. All right. But since both the lawyers on the Nelson case, which was previously called, are here, rather than if both of you would come forward. I do see now that it would appear that both Mr. Widener and Mr. Long are present. Is that correct? Yes, ma'am. Okay. Thank you, Your Honor. And all I wanted to say was is that one of the cases I'm referring to is the Strum-Ruger case. I have a copy, and at page 43, that's the reference to the state of the art issue, and they actually cite the Judge Lerner to hand opinion referred to by Justice Kleinfeld, the T.J. Hooper case. I've got a copy. I can hand it up or proceed as the court pleases. All right. Have you had a chance to look at that? No, Your Honor. Maybe if you just – maybe a cite would be better, and that way we can be certain that we can pull the – what's the cite? It's 594 P. 2nd, 38. It's Strum-Ruger and Company, verse A, Alaska, 1979. And the actual – I believe it's page 43 of the opinion, and it's subparagraph 9 where it addresses the issue. All right. Thank you. Thank you for your indulgence, Your Honor. Thank you both. I appreciate that. This court is now adjourned until Friday, July 29th. All rise. This court for this session.
judges: B Fletcher, Kleinfeld, Callahan, Cjj